## STATE v. MANCKE.

1. A city license, dated in July, to retail liquors to December 31st, gave no license to sell in the January preceding, although the tax had then been in part paid, and it was customary to pay in two installments.
2. This case distinguished from *City Council* v. *Corleis*, 2 *Bailey* 186.
3. A grant of license by a city council without the payment of the county license required by the act of 1880 (17 *Stat.* 459), would be void.
4. *Semble.* An act commencing "on and after the passage of this act," &c., but which no otherwise names a special day for the act to take effect, goes into operation on the day of its approval by the governor.
5. An act approved December 24th, 1880, if governed by the terms of the act of 1879 (17 *Stat.* 69), and, therefore, not of force "until the twentieth day after its approval by the executive," became of force immediately after twelve o'clock midnight of January 12th, 1881.
6. The act of 1880 (17 *Stat.* 459) is not unconstitutional.

Before WALLACE, J., Richland, March, 1882.

The opinion states the case.

*Messrs. U. R. Brooks, R. A. Lynch,* for appellants.

*Messrs. Solicitor Bonham, Abney & Abney,* contra.

August 9th, 1882. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The defendant was indicted for retailing without a license on January 15th, 1881, in the city of Columbia. He admitted that he had sold spirituous liquors as alleged in the indictment, but insisted that, at the time, he had a license from the city council of Columbia. He produced the following papers :

"COLUMBIA, S. C., January 13th, 1881.

" Received from Julius H. Mancke, fifty dollars on account of license for the current year.

" $50.    RICHARD JONES,

" [SEAL.]    *City Treasurer.*"

F

" This must be displayed in a conspicuous place.

" No. 853.                                    City License.

" STATE OF SOUTH CAROLINA,       ⎫
        COLUMBIA, July 20th, 1881. ⎭

" *Mr. J. H. Mancke*—Licensed by the city council of Colum-
bia to carry on the business of retailing in this city at corner of
Washington and Richardson streets until December 31st, 1881.

" R. JONES, *City Clerk and Treas.*

" RICHARD O'NEALE, JR., *Mayor.*"

It was in evidence that the license for the last two years had
been $100 each year for the city of Columbia; that the city
generally gave persons taking out license the privilege of paying
the $100 in two installments; that the license of defendant for
the year previous expired on December 31st, 1880, and that the
receipt above, given on January 13th, 1881, for $50, was for the
first installment of the city license for 1881; and that it was
understood that the other $50 would be paid when called for.

The license above given on July 20th, 1881, was issued when
the second $50 was paid, and no other license was issued for
that year. The city clerk was directed by the mayor to issue no
licenses until the city tax of $100 was paid, and also the county
tax of $100, imposed by the act of 1880. The defendant
never offered to pay the county tax or proved that he had paid
the same. The Circuit judge held that the act of December
24th, 1880, was of force on January 13th, 1881, when the
defendant paid the first $50 on account of license, and that, before
getting license, the defendant should not only have made his
arrangements as to the city license, but have shown that he had
paid the county tax of $100 imposed by the act of 1880.
Under the ruling of the judge, the jury found the defendant
guilty, and he appeals to this court upon the following exceptions:

1. For that his Honor charged the jury that the act en-
titled " An act to further regulate the sale of spirituous liquors
in this State," approved December 24th, 1880, took effect and
became of force on the day of its approval by the executive.

2. For that his Honor charged the jury that the receipt

issued by Richard Jones, clerk of the city council of Columbia, dated January 13th, 1881, and bearing the impress of the seal of the corporation, for $50 on account of license for the year 1881, was not such evidence as would show that the city council had granted a license to the defendant to sell liquor from the first day of January, 1881.

3. For that his Honor should have charged the jury that no other day being specially named in the act prohibiting the sale of spirituous liquors, the act did not go into effect until twenty days after its approval, and that the city council having granted a license to the defendant to sell liquor during the year 1881, before the act took effect, to wit, on January 13th, 1881, the jury should bring in a verdict of not guilty.

4. That the act entitled an act " to further regulate the sale of intoxicating liquors in this State " is unconstitutional and void— (1) Because it violates section 21 of article I. of the constitution of South Carolina in this, that it impairs the obligation of the contract entered into between the city of Columbia and the defendant in the matter of license. (2) Because it violates section 38 of article I. of the contstitution by depriving the defendant of his property by statute. (3) Because it violates section 9 of article I. of the constitution of the United States in this, that the act does not exempt from its provisions imported liquors to be sold in bulk.

5. That this act did not go into effect until the twentieth day after approval of the act.

Did the defendant have a license to retail when he sold spirituous liquors on January 15th, 1881? He certainly did not have any written evidence of a license in terms. His license for the year 1880 had expired, and the only evidence of a license which he then had was the receipt for $50, given on January 13th, 1881. It is true, that afterwards, when the grand jury had returned " no bill " on indictments which had been given out in like cases, the clerk of the council, on July 20th, 1881, did issue a license for the last half of the year, and it is insisted, under the authority of the case of *City Council* v. *Corleis,* 2 *Bailey* 186, that the license granted in July had reference back and covered also the *first six months of the year.*

That case does hold that "the grant of a license to retail spirituous liquors from a day past, is a release of the penalties for retailing without license subsequent to that day, although prior to the taking out of a license." But this case is not at all analogous to that, which was a civil action for a penalty which the plaintiff had waived. Here the license was granted on July 20th, and does not name any day in the past from which the license was to run; but, on the contrary, is only prospective in its terms, "until December 31st, 1881." And instead of the intention being that it should have retroactive operation, the exact contrary is true. Mayor O'Neale testifies that he instructed the clerk not to issue a license until the party had complied with the State law; and the clerk testifies that no license was issued to the defendant for the first six months of the year 1881. So that even if the act of 1880 had never been passed, the defendant had no license to retail on January 15th, 1881.

But on December 24th, 1880, was approved the "Act to further regulate the sale of intoxicating liquors in this State" (17 *Stat.* 459), which, among other things, provides that "no license for the sale of intoxicating liquors shall be granted by any municipal authorities in any city, town or village in this State, except upon the payment by the person applying for the same to the treasurer of the county in which such city, town or village is located, the sum of $100 in addition to the license charged by such city, town or village, for the use of such county," &c. The city council of Columbia was positively inhibited by this law from granting license to any applicant for the year 1881, without proof that such applicant had paid to the treasurer of the county of Richland $100 in addition to the license charged by the city. There is no evidence that the defendant made such payment to the county, and if the municipal authorities of the city had actually granted a license to him without such payment (of which there is no evidence), such pretended grant, being in direct violation of the law, would have been absolutely void.

It is argued, however, that the act of 1880 did not take effect until "the twentieth day" after its approval by the governor, according to the act of 1879, which provides "that no act or joint resolution, enacted or passed by the general assembly of

this State, * * * shall take effect or become of force until the *twentieth day* after its approval by the executive, *unless some other day be specially named in the body of the act as the day upon which such act shall take effect,"* &c. The first section of the act of 1880 commences with these words: "That from and after the passage of this act, no license," &c.; but it is contended that, although in the body of the act, these words do not name specially any other day upon which the act was to take effect, and, therefore, it was not made an exception to the rule established by the act of 1879.

By section 22, article III. of the constitution, every act of the legislature becomes a law as soon as it is approved by the governor, unless its operation is postponed by some competent authority. *Ex parte DeHay,* 3 *S. C.* 564. Although it is recognized that one legislature cannot absolutely bind another upon subjects of substantial legislation, yet the legislature of 1879 endeavored, by the act of that year, to establish a convenient and just regulation in a matter merely administrative in its character, to which subsequent legislatures have conformed by so declaring when it was their intention that an act should go into operation immediately upon its passage. We have no doubt that it was the intention of the legislature to make the act of 1880 an exception, and to give it the force of law upon its approval by the governor. It is not usual to insert in an act that it is to take effect "from and after its passage." That sentence could not have been put in the body of this act for no known purpose, except to take it out of the provisions of the act of 1879 and put it into immediate operation. The year was about to close, and there were many reasons why the act should go into operation immediately.

But assuming that such was the intention of the legislature, it is insisted that the words used were not sufficient to accomplish the purpose; that no other day is specially named as the act requires. It was substantially admitted in the argument, that if the identical words "from and after the passage of this act" had been expressed in a separate section at the end of the act (as in the immigration act approved on the same day), there could have been no reasonable doubt about it. We incline to

think that they are sufficient, as they stand, to indicate the intention of the legislature to put the act in force immediately. " From and after the passage of this act " referred to the whole act, and meant from and after the day (December 24th) on which the act should be approved by the governor, as certainly as if that day had been "specially named." The only reason why the day of the month was not named, was because it could not then be foreseen on what day it would be approved by the governor.

But for the purposes of this case it is not necessary to make this ruling. There is no doubt that the act was approved by the governor on December 24th, and, counting that day, the twenty days fixed by the act (as December had thirty-one days) expired at twelve o'clock on the night of January 12th, which was before defendant paid his first $50 on January 13th, and took his receipt, which, he claims, was substantially a license from the city authorities. He certainly had no pretense of license before that day. In any view, then, the act was in operation on January 13th, 1881, and the city council had no authority to grant a license unless the applicant produced the evidence that he had paid the $100 to the county, which the act required. *Arnold* v. *United States,* 9 *Cranch* 119 ; *Krom* v. *Levy,* 60 *N. Y.* 126.

In the case from Cranch, Judge Story said : " It is contended that this statute (passed July 1st) did not take effect until July 2d. We cannot yield assent to this construction. The statute was to take effect from its passage ; and it is a general rule that when the computation is to be made from an act done, the day on which the act is done is to be included." In the New York case, it was said : " The New York statute fixing the time from which a statute shall take effect, provides, ' every law, unless a different time be prescribed therein, shall commence and take effect * * * on and not before the twentieth day after the day of its final passage.' The act prohibiting appeals to this court in cases involving less than $500, was passed on May 2d, 1874, and did not provide when it should take effect. *The twenty-second day of May was the twentieth day after its final*

*passage,* and consequently it became a law the instant that day began."

There is nothing in the objection that the act of 1880 is unconstitutional. We have just seen that the defendant had made no contract with the city council in regard to license for the year 1881, before the act went into operation, and, therefore, no question can arise as to impairing such a contract.

The judgment of this court is that the judgment of the Circuit Court be affirmed.